Samuel R. Randall (No. 024517)
**RANDALL LAW PLLC**
4742 N 24th Street, Suite 300
Phoenix, Arizona 85016
Telephone: (602) 328-0262
srandall@randallslaw.com

Attorney for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Diane Kahn, | No. |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| All Saints' Episcopal Church, an Arizona nonprofit corporation, dba All Saints' Episcopal Day School; and Andrew Cipriano, in his individual capacity; and the community of Andrew Cipriano and Teresa Cipriano, Husband and Wife, | **(Jury Trial Demanded)** |
| Defendants. | |

Plaintiff Diane Kahn (Kahn) alleges for her Complaint as follows:

This action is brought pursuant to the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.* (ADEA), and supplemental jurisdiction for defamation.

**PARTIES**

1. Plaintiff Diane Kahn is a citizen of the United States, and a resident of Phoenix, Arizona.

2. Defendant All Saints' Episcopal Church is an Arizona nonprofit corporation doing business as All Saints' Episcopal Day School (All Saints'). Its headquarters are located in Phoenix, Arizona.

3. All Saints' employs 20 or more employees.

4. The ADEA covers all private employers with 20 or more employees, state and local governments (including school districts), employment agencies and labor organizations. 29 U.S.C. § 630.

5. Andrew Cipriano (Cipriano), during relevant times, was the Lower School Head at All Saints' and is sued in his individual capacity.

6. All actions of Cipriano were undertaken in furtherance of, and for the benefit of, the marital community of Andrew and Teresa Cipriano.

**JURISDICTION AND VENUE**

7. This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1343, the ADEA, as codified, 29 U.S.C. §§ 621 to 634; and supplemental jurisdiction under 28 U.S.C. §1367.

8. Venue is proper in the District of Arizona as Defendant All Saints' is headquartered in Arizona, it conducts business in Arizona, and Defendants Andrew and Teresa Cipriano reside in Arizona, and the acts complained of and giving rise to the claims alleged herein occurred in Arizona.

**GENERAL ALLEGATIONS**

9. After about 16 years of teaching elsewhere, Mrs. Kahn began working for the All Saints' since approximately April 2002 as a teacher.

10. Prior to teaching at All Saints', Mrs. Kahn's sons had attended All Saints' and so Mrs. Kahn was very familiar with the All Saints' community.

11. When the opportunity to teach at All Saints' became available, Mrs. Kahn enthusiastically jumped at the chance.

12. Mrs. Kahn loved everything about All Saints' and her new teaching job.

13. She proceeded to teach first grade at All Saints' for the next 7 years where she implemented many new ideas and programs.

14. Her ongoing goal was always to find ways to challenge the top students in her class while ensuring that her emergent readers became strong readers.

15. Mrs. Kahn's extraordinary efforts with her students did not go unnoticed. Parents told her on many occasions that she had earned the reputation of being "the reading teacher" at All Saints'.

16. Mrs. Kahn loved teaching first grade and inspiring her young students to love reading specifically and to love learning generally.

17. After 7 years of teaching first grade, Mrs. Kahn was asked to transfer to kindergarten (along with one of her first-grade team mates).

18. Although Mrs. Kahn was sad to leave first grade, Mrs. Kahn embraced her new grade level.

19. This was to begin her decade-long stay in kindergarten. Once again, Mrs. Kahn fell in love with her new teaching assignment. Her passion is children's literature and her classroom bookshelves were filled with hundreds of beautiful children's books.

20. Mrs. Kahn loved teaching all the academic subjects, but teaching reading was definitely her favorite. The children start kindergarten with a very wide range of reading abilities. Some children were still working on letter names and sounds, while a few were already reading independently. For that reason, Mrs. Kahn individualized her reading program to meet all of their needs. It was comforting to the parents to know that the needs of their young kindergartner were being met.

21. Many All Saints' parents would tell Mrs. Kahn that they had heard so much about her from other parents and were hoping that their child would be placed in her class. Younger siblings of former students were often placed in her class by request. In fact, Mrs. Kahn even taught four children from the same family.

22. When prospective parents toured All Saints' and were brought to her classroom to observe, Mrs. Kahn was to later learn that many of these parents chose All Saints' because of their visit with her.

23. Mrs. Kahn had a spotless, outstanding reputation at All Saints'. As already mentioned, Mrs. Kahn loved her job and she loved All Saints'. Mrs. Kahn had no plans of retiring in the near future.

24. Mrs. Kahn actually fancied herself as the 80-year-old woman still teaching kindergarten. Mrs. Kahn had an excellent attendance record at All Saints'. Most years, she would only miss a few days of school, and some years Mrs. Kahn even had perfect or near-perfect attendance.

25. Every year, Mrs. Kahn kept current with educational trends and programs by attending relevant conferences—usually in the summer so that Mrs. Kahn would not miss any school days. For three years in a row, Mrs. Kahn attended a 3-day kindergarten conference in Las Vegas in July. Her favorite teaching days were the days when she was trying something new!

26. Mrs. Kahn was so passionate and dedicated about her job that she regularly worked 6 days a week.  With very few exceptions, she would work at least one weekend day every week. Mrs. Kahn did this because she wanted to, and because of her love for her work.

27. Mrs. Kahn also stayed at school later than the required time, and she <u>always</u> brought work home to do. Mrs. Kahn wanted to give her students the best experience she could. Mrs. Kahn wanted them to have fun learning and to love school! She consistently went above and beyond what is required, because she cares tremendously about her students. Mrs. Kahn provided an exceptional education to all of her students.

28. During her years at All Saints', Mrs. Kahn served on the Admissions Committee for many years, and she served on the HAC (Head's Advisory Committee) for about 5 years.  Mrs. Kahn has come in on Saturdays to test prospective kindergartners or prospective first grade students almost every year that she has been at All Saints'.

- 4 -

29. Mrs. Kahn has attended professional conferences and seminars every year. For the past 17 years Mrs. Kahn has hosted the lower school Christmas party. For the first 7 years it was in her home, then in her classroom the past 10 years. Mrs. Kahn did this because she loves being able to do something special for the lower school teachers, who are her friends and an integral part of her All Saints' family.

30. During her tenure at All Saints', Mrs. Kahn has always received excellent evaluations. Tom Fassler, the former head of lower school at All Saints' wrote the following about Mrs. Kahn:

> I appreciate the highest level of professionalism, especially as it relates to working together harmoniously in lower school and as an effective team. Your leadership and positive energy at the kindergarten level will help build success as we implement changes to the curriculum. You are open to alternative instructional strategies in creating a supportive learning environment for the full range of learners you have. I have been so impressed with your willingness to learn and utilize the Wilson methodology. You are not afraid to grow. If it is good for the children, you demonstrate a willingness to implement new strategies and methodologies. You are not afraid of new ways of doing things and bring the energy necessary to be successful.

31. Shelley Campbell, another former head of lower school at All Saints' wrote: "Diane is a respected member of the faculty.  She values the friendships she has with her colleagues." And, "It is clear that Diane's goal for all of her students is to instill a lifelong love of learning."

32. Mrs. Kahn's work performance was at least satisfactory.

33. Indeed, for 31 years of teaching both at All Saints' and elsewhere, Mrs. Kahn had never received anything but excellent teacher evaluations.

34. Mrs. Kahn's end-of-year evaluation in May 2017—prior to her engaging in protected activity—from her then supervisor, Andrew Cipriano, was also excellent.

35. Along with excellent evaluations from principals and lower school heads, Mrs. Kahn has received countless letters of thanks from parents. She has a large box filled with these letters, from All Saints' parents alone.

36. Just this last year, 5 former kindergarten parents came to her and asked her to stay at All Saints' long enough for their younger preschool or pre-K children to be in her class. A parent from last year's class recently expressed her hopes that her youngest would be in her kindergarten class. She said to Mrs. Kahn, "you were put on this earth to teach kindergarten."

**Andrew Cipriano Engages in Ageism and Retaliation**

37. As noted above, up to and including the May 2017 evaluation, all of Mrs. Kahn's evaluations as a teacher had been exemplary. In May 2017, she again received an outstanding evaluation from the head of lower school, Andrew Cipriano. Soon thereafter, everything began to change.

38. Later that month, the administration shared the results of a faculty survey. The survey indicated that morale in lower school was low. At a lower school faculty meeting, Mr. Cipriano referenced this survey saying he would like more specific information as to why lower school morale was low. He asked the lower school teachers to submit this information to him.

39. For several months prior to the faculty survey, Mrs. Kahn—despite her overall love of teaching at All Saints—began feeling that Mr. Cipriano was treating her differently because of her increasing age.

40. Mr. Cipriano was consistently dismissing her ideas and suggestions she shared with ageist comments such as "this isn't the old All Saints" or "you keep falling back on your old ways."

41. He made it clear that he did not value Mrs. Kahn nor did he want to listen to what she had to say or contribute. He discredited Mrs. Kahn, belittled her and made her feel unwelcome. Whenever an opportunity came about for Mrs. Kahn to share her thoughts or ideas, she was abruptly cut off by Mr. Cipriano. He was often critical of Mrs. Kahn's technology skills. His message to her was loud and clear: she was old school and not a valued part of his program.

42. On the other hand, Mr. Cipriano regularly heaped praise on his younger teachers, complimenting them publicly on many occasions. It was painfully evident that Mr. Cipriano had a double standard; one for her as an older teacher; and another for the younger teachers.

43. In the four years that Mr. Cipriano had been lower school head, 8 teachers over the age of 50 left; most of the departing teachers commented that they felt undervalued and unappreciated by Mr. Cipriano.

44. With this backdrop, Mrs. Kahn shared her comments about the faculty survey including that in the lower school teacher input was not welcomed or respected and that Mr. Cipriano was not receptive to faculty opinions. Mrs. Kahn further shared her view that Mr. Cipriano engaged in favoritism of the younger teachers and that the rest of the teachers were not complimented, thanked or acknowledged nor did they feel appreciated or respected.

45. Because Mrs. Kahn's comments were made in her writing voice, Mr. Cipriano knew who wrote the comments. When the teachers returned to school in August, Mr. Cipriano shared a PowerPoint presentation with the lower school faculty that highlighted the results of his survey. He shared a specific quote (Mrs. Kahn's) with the entire faculty and remarked that it was "so hurtful." Although Mr. Cipriano had asked for the input, he was obviously very angry about the feedback about ageism he had received from Mrs. Kahn. It did not take Mr. Cipriano long to begin his campaign of retaliation.

46. The first week of school, in mid-August of 2017, Mrs. Kahn had recess duty. She stationed herself under a shade tree in clear view of the entire playground, and close to the swings which always need extra monitoring. Mr. Cipriano came out to the playground towards the end of recess and asked her why she wasn't walking around the playground and using an umbrella for shade. Mrs. Kahn explained that she had an excellent view of the entire playground, and that only a few students were actually out on the playground, in the August sun. Most of the students were in the shaded areas (sand area and swings).

47. Later that day, Mr. Cipriano came into Mrs. Kahn's classroom and lit into her. He was very angry and proceeded to yell at her about how furious he was that she was not walking around. Mrs. Kahn was not given a chance to reply, nor was the environment conducive to conversation. A gentle reminder would have been very effective, but by the time Mr. Cipriano left her room Mrs. Kahn was in tears and very upset. She later emailed Mr. Cipriano to explain her skin cancer history (5 skin cancers, one quite serious). Mrs. Kahn explained that she does not like to ask to be excused from duties or requirements. Additionally, she mentioned that she asked the duty-scheduler (Jennifer Bradley) to schedule her in the winter months for carpool duty, which she does. Mrs. Kahn is always very conscientious about her duties. She never forgets to show up for a duty, and she is always on time, or early.

48. This incident was to be the beginning of a cycle of recurring harassment, bullying, and retaliation from Mr. Cipriano. His demeanor in this "meeting" and every meeting to follow, was abusive and intimidating.

49. Only a few weeks after that meeting, Mrs. Kahn was asked to meet with Leo Dressel, Head of School, and Mr. Cipriano. At this meeting Mrs. Kahn learned that she would be on probation for a year.

50. The October 12, 2017 probation letter was vague and filled with generalities. It stated many things that Mrs. Kahn needed to do, implying that she was not already doing these things. Mrs. Kahn was being judged on things that neither Mr. Dressel nor Mr. Cipriano had ever observed. The letter was clear that if Mrs. Kahn received a designation of "unacceptable" in any area, her contract would not be renewed for the following year.

51. Mrs. Kahn went from having a glowing evaluation in May of 2017 to being on probation only a few weeks into the following school year. What changed in those few weeks? It was obvious at that point that Mrs. Kahn was being targeted and punished for what she had written about Mr. Cipriano's ageist actions in the survey in May.

52. In the probation letter, it was stated that Mrs. Kahn would need to meet with Mr. Cipriano once a month to update him on her progress. She did this. In fact, when the

end of a month would approach, and Mrs. Kahn hadn't heard from Mr. Cipriano about their monthly meeting, she would email him a reminder. Mrs. Kahn was removed from probation during that school year and her contract was renewed for an additional school year.

53. Still, Mr. Cipriano gave Mrs. Kahn low, undeserved marks on her annual review, perpetuating his retaliatory campaign.

54. Interestingly, the rubric and evaluation system used was new for that school year. The rubric was very wordy, subjective, and ripe for abuse. All of Mrs. Kahn's "ratings" were "proficient" (mediocre) except for one exceeding and one "needs improvement" (use of technology).

55. When Mrs. Kahn met with Mr. Cipriano to discuss her ratings, he again was explosive and angry. Indeed, it seemed that Mr. Cipriano was furious that Mrs. Kahn wanted to discuss her evaluation. She told Mr. Cipriano that she was not accustomed to getting "average scores" on her teaching evaluations. Mrs. Kahn has kept most evaluations from 33 years of teaching, and they have all been excellent.

56. Mr. Cipriano's response was that, at a school like All Saints', a "proficient" evaluation is good. Mrs. Kahn told Mr. Cipriano that she had starred two areas in which she was positive that she exceeded expectations.

57. Mentoring other teachers was the first area. Mrs. Kahn has now mentored 3 new kindergarten teachers, including one during that school year. Mrs. Kahn even suggested that he ask Thia Lutich, Nicole Tamer, and Mariana Morrill about how much she helped them. He still did not want to change the rating.

58. The second area that Mrs. Kahn asked him to change was professional development. That year she attended a 3-day conference during their 5-day winter break. Mrs. Kahn went to this conference because it was Mr. Cipriano's pet project (only 4 other teachers went). She had also attended an all-day math seminar. Even with that, Mrs. Kahn did not receive an "exemplary" rating.

59. Even though Mr. Cipriano eventually—and reluctantly—changed the rating for these two areas, the overall evaluation rating was still well below what Mrs. Kahn deserved.

60. It was clear that Mr. Cipriano had the intention of giving Mrs. Kahn low ratings in an attempt to justify having placed her on probation earlier in the year. Had he given Mrs. Kahn the exemplary scores that she earned and deserved, he would not have been able to justify the false accusations and innuendos listed in her fall probation letter.

61. Mrs. Kahn was an "A" student throughout grade school, high school and college. She has consistently been an "A" performer as a teacher throughout 33 years of teaching. Her past evaluations are testaments to her high teaching standards. Her high standards have never changed; she has <u>always</u> strived for excellence.

62. During a meeting in December 2018 between Mrs. Kahn and Mr. Cipriano, he accused her of "falling back on old ways of teaching." He also accused her of not using the iPads often enough or doing reading groups. But he could not have had any reasonable basis for his false accusation: <u>Mr. Cipriano had only stepped into Mrs. Kahn's classroom once all year, for a brief, formal observation</u>. And, in the previous three years, he had only come into Mrs. Kahn's classroom once or twice a year, and not at all his first year.

63. Mr. Cipriano was, once again, very angry. He talked down to Mrs. Kahn in an extremely condescending and intimidating manner. During this meeting, Mr. Cipriano threatened to move Mrs. Kahn to a different grade level, which is a well-known threat and strategy used by All Saints' school administrators when they are trying to get rid of a teacher.

**Leo Dressel Sanctions Age Discrimination and Retaliation**

64. Leo Dressel was the Head of School and was Mr. Cipriano's supervisor. Mr. Dressel was the obvious and only choice of leaders from who she could seek assistance.

65. Mrs. Kahn was experiencing anxiety and was concerned for her health because of the recurring abuse she was enduring from Mr. Cipriano.

66. All faculty and staff at All Saints' are regularly required to take a course called "Safeguarding God's Children." In the course, participants are directed to bring matters of abuse to the attention of the school's leadership.

67. Mrs. Kahn sought Mr. Dressel's assistance as both Head of School and as Mr. Cipriano's supervisor.

68. It was after the December 2018 meeting with Mr. Cipriano that Mrs. Kahn finally reported to Mr. Dressel the abusive and discriminatory treatment she had been enduring from Mr. Cipriano for a year and a half.

69. This was in a written letter dated December 11, 2018. Mrs. Kahn's letter began with this sentence: "In the past year and a half I have experienced a pattern of retaliation, humiliation, intimidation and harassment from Andrew."

70. Though Mr. Dressel never observed her teaching in his 10 years at All Saints', in a meeting on December 20, 2018, he blindly defended and supported Mr. Cipriano's false accusations, including but not limited to, that there was a pattern of difficult dynamics and relationships on grade level teams on which Mrs. Kahn served; a lack of willingness to follow programmatic expectations consistently; and that Mrs. Kahn lacked the ability to work positively with Mr. Cipriano. Mr. Dressel displayed no interest in hearing from Mrs. Kahn and no concern whatsoever about the abuse.

71. Worse still, after their in-person meeting where Mrs. Kahn again raised her concerns about being discriminated and retaliated against by Mr. Cipriano because of her age, Mr. Dressel, in a December 21, 2018 email, summarily dismissed her concerns and, instead, put *her* on notice that he was considering terminating *her* employment:

> Good morning, Diane. I wanted to summarize our conversation yesterday. **I first verified that you did not intend to file a formal legal claim of harassment**. I made clear that this is a very serious situation and that **your continued employment** at All Saints' **was under review**.

See December 21, 2018 email attached as Exhibit 1. (Emphasis added).

- 11 -

72. Mr. Dressel then invited Mrs. Kahn to reflect on three items and asked her to "submit her reflections in writing shortly after our return to school in January." Accordingly, Mrs. Kahn, in her January 11, 2019 response to Mr. Dressel, again reiterated that she sought him out for assistance because:

> During the Safeguarding God's Children program, we were clearly told to bring our concerns regarding retaliation and harassment to the attention of our superiors. **I have come to you, asking for help, with harassment, retaliation and discrimination** that has been **because of my age and seniority**.

See January 11, 2019 letter, attached as Exhibit 2. (Emphasis added).

73. Less than a week later, on January 17, 2019, Mr. Dressel informed Mrs. Kahn that her employment would be terminated at the end of the school year and that she would not be offered an employment contract for the 2019-20 academic year.

74. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), EEOC Charge No. 540-2020-00169, on November 12, 2019.

75. Plaintiff received her Notice of Right to Sue to bring claims under the ADEA on or around April 10, 2020.

**COUNT ONE**

**(Discrimination in Violation of the ADEA)**

76. Plaintiff incorporates all previous allegations as though set forth fully herein.

77. All Saints' is an employer covered by the ADEA. 29 U.S.C. § 630.

78. Defendant All Saints' discharged Plaintiff by not renewing her contract.

79. Plaintiff was 40 years of age or older at the time she was discharged.

80. Defendant All Saints' discharged Plaintiff because of her age, that is, Defendant would not have discharged Plaintiff but for her age.

81. As a result of Defendant All Saints' conduct, Plaintiff has suffered and continues to suffer lost income, lost fringe benefits, mental anguish, emotional distress, pain and suffering, humiliations and harm to reputation.

## COUNT TWO

### (Retaliation in Violation of the ADEA)

82. Plaintiff incorporates all previous allegations as though set forth fully herein.

83. In complaining about age discrimination, Mrs. Kahn engaged in protected activity under the ADEA. 29 U.S.C. § 630.

84. There is a causal connection between Mrs. Kahn's protected activity, and the adverse employment actions Defendant All Saints' subjected her to.

85. As a result of Defendant All Saints' conduct, Mrs. Kahn has suffered and continues to suffer lost income, lost fringe benefits, mental anguish, emotional distress, pain and suffering, humiliation and harm to reputation.

86. Defendant All Saints' actions were done with malice or with reckless indifference to Mrs. Kahn's federally protected rights.

## COUNT THREE

### (Defamation)

87. Plaintiff incorporates all previous allegations as though set forth fully herein.

88. As noted above, Andrew Cipriano published defamatory, false statements about Mrs. Kahn to a third person.

89. These false, defamatory statements were made with a degree of fault.

90. These false, defamatory statements were intended to and did bring Mrs. Kahn into disrepute, contempt or ridicule or impeached her honesty, integrity, virtue or reputation.

91. Mr. Cipriano's false, defamatory statements about Mrs. Kahn have harmed her professional and personal reputation, are libelous per se and are actionable without proof of special damages.

92. As a result of Mr. Cipriano's defamatory, false statements, Mrs. Kahn was damaged.

### IX.   JURY DEMAND

93.   Pursuant to their rights under the Constitution of the United States, U.S. Const. amend VII, and Fed. R. Civ. P. 38(a), Plaintiff hereby demands a trial by a jury of twelve.

### PRAYER FOR RELIEF

94.   For these reasons, Plaintiff respectfully request that judgment be entered in her favor and against all Defendants, jointly and severally, awarding the following relief:

a.   An award of economic damages, including lost back and front pay in an amount sufficient to make Plaintiff whole for past and future income and benefits and other economic damages suffered by Plaintiff resulting from Defendants' conduct;

b.   An award of an equal amount of all owed wages as liquidated damages as allowed under the ADEA;

c.   Prejudgment and post-judgment interest;

d.   Reasonable attorneys' fees, costs and expenses of this action as provided by the ADEA; and

e.   Such other and further relief to which Plaintiff may be entitled, at law or in equity.

DATED this 28th day of April 2020.

RANDALL LAW PLLC

/s/ Samuel R. Randall
Samuel R. Randall
Attorney for Plaintiff